24 C.C.P.A.(Patents)

## In re WEBER.
### Patent Appeals No. 3742.

Court of Customs and Patent Appeals.
Feb. 1, 1937.

Fred Gerlach and Norman H. Gerlach, both of Chicago, Ill., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

There are here involved four claims, numbered, respectively, 1, 5, 9, and 10, of an application for patent, which were denied in view of the prior art cited by the Examiner whose decision was affirmed by the Board of Appeals of the United States Patent Office. The application is entitled "For Constant Level Apparatus," the device being one designed particularly for maintaining oil at a substantially continuous level in the crank cases of automobiles, trucks, and the like. One claim stands allowed.

The appealed claims are divisible into two groups, claims 1 and 5 comprising one group, and claims 9 and 10 the other.

As typical, we quote claims 1 and 9:

"1. In combination with a vehicle having an internal combustion engine mounted thereon for propelling purposes, an apparatus for constantly maintaining the oil in the crank case of the engine at a predetermined level comprising an air-tight reservoir mounted on the vehicle above said level and adapted to contain a supply of oil, a feed pipe having one end thereof connected to the bottom of the reservoir to receive oil therefrom and its other end extending into the crank case and terminating adjacent to the intersection of the longitudinal and transverse centers of the crank case and beneath said level and serving when the reservoir is vented to feed oil from the reservoir to the crank case, and a vent pipe having one end thereof leading to the top of the reservoir and its other end extending into the crank case and terminating at the level at which the oil is to be maintained in the crank case and at said intersection of the longitudinal and transverse centers of the crank case, and adapted when the oil in the

crank case drops below its proper level and exposes to atmosphere its said other end to introduce air into the reservoir for oil-feeding purposes.

"9. An apparatus for maintaining a liquid at a constant level in a case or tank, comprising an air-tight, liquid-containing reservoir above the case, a feed pipe leading from the bottom of the reservoir to the tank, a vent pipe leading from the top of the reservoir to the point in the tank at which the desired liquid level is to be maintained, and a device operative in response to suction in the reservoir for indicating the quantity of liquid in the reservoir."

The reference patents cited are: Martin, 1,328,843, January 27, 1920; Harne, 1,-433,613, October 31, 1922.

■ The drawings of appellant disclose a construction in which an air-tight reservoir for containing reserve oil is located above the crank case. Two flexible conduits lead from the reservoir to the crank case, one being designated as a feed pipe and the other as a vent pipe. The lower or crank case end of the feed pipe has a tube-like part, or extension, which runs horizontally into the lower part of the crank case, being placed in a position beneath the level at which the oil is to be maintained in the crank case, and having its open end at the intersection of the longitudinal and transverse centers of the crank case. The vent pipe also has a tubular extension running horizontally into the crank case and located directly above the tubular extension of the feed pipe, designed to be located at the level at which the oil is to be maintained. The open end of this latter tubular extension, like the open end of the other, is at the intersection of the longitudinal and transverse centers of the crank case.

While the device, as a whole, contains many features in combination, the foregoing construction embraces the elements upon which appellant particularly relies to render claims 1 and 5 patentable.

The emphasized feature of claims 9 and 10 is a construction referred to in the specification as "a suction-responsive device" for indicating the quantity of liquid in the reservoir, it being recited in claim 10 that the device is mounted on the instrument panel of the vehicle. By so mounting it, the driver of the vehicle is enabled to observe the indicator from his seat and note the amount of oil in the reservoir. The construction consists of a casing mounted in the instrument panel in front of the dashboard, equipped with a pointer which is under control of a diaphragm located in the casing and connected by a hose to an elbow on the top of the reservoir, the elbow feature extending into the reservoir, so that the diaphragm communicates with the interior of the reservoir by means of the hose. The specification explains that when the reservoir is closed and suction exists therein, the diaphragm is contracted, while when air is admitted to the reservoir, as, for example, when the reservoir runs dry, the diaphragm expands. These respective actions of contraction and expansion operate upon the pointer which registers upon a dial the state of the oil content of the reservoir.

The patent to Martin discloses a reservoir having a feed pipe extending therefrom and connected with the lower end of a transparent stand pipe or sight tube, which tube in turn is connected with the crank case. It shows also a pipe extending from the top of the reservoir to the top of the sight tube and connected with each through appropriate means so that it acts as a vent pipe. The transparent stand pipe is located outside the crank case, and neither the feed pipe nor the vent pipe of the patent extends directly into the crank case. The connection between the sight tube and the crank case is at one side of the crank case, so that the oil passing from the reservoir does not enter the crank case at its longitudinal and transverse center, as is provided by appellant's device, nor does the vent pipe act from that point. The Martin patent was cited as showing, to paraphrase the language of the Examiner, that the use of a sealed reservoir, feed pipe, and vent pipe for maintaining a desired level in a crank case is old.

The Harne patent discloses a reservoir with feed pipe extending therefrom into the crank case where it connects with a chamber in which there is a float that carries a tube which slides in a sleeve. Both tube and sleeve have holes which are adapted to register when the float is lowered so as to permit oil to flow into the crank case. Means consisting of a cone valve are provided for cutting off the supply of oil when the float is lifted. The specification of Harne recites that the float chamber "is arranged in the crank case substantially centrally thereof." No vent pipe is shown. Harne also shows a pressure tube which, it is said in his specification, may be arranged in the reservoir and extend to the instru-

mental board or other convenient location and connected to a suitable gage to register the level of oil in the reservoir.

Referring particularly to claims 1 and 5, the Examiner said:

"In combining Martin and Harne the examiner's position was that Martin shows the fundamental principle of the feed and vent pipe arrangement to be old and in view of Harne, who teaches the positioning of the control means at the crank case center to provide for the desired control regardless of crank case tilt to be old, no invention would be required to extend the feed and vent pipes of Martin to the crank case center."

As to claims 9 and 10, the Examiner held that they read upon Martin so far as any patentable features are present, except for the gage included at the end of each claim (the feature we have heretofore referred to as "a suction-responsive device"), but held that the feature of Harne described as a pressure tube located in the reservoir anticipated appellant's gage feature.

The Board of Appeals concurred with the Examiner throughout. Discussing claims 1 and 5, it said:

" * * * Broadly, applicant provides a so-called barometric feed type of apparatus comprising an air-tight tank to hold a reserve supply of oil at some elevated point above the oil pan. Two pipes lead from the air-tight reserve oil tank to the oil pan. One pipe serves as a simple gravity oil flow pipe. The second pipe is a vent pipe leading from the top of the air-tight tank and opening at the exact center of the surface of the oil bath in the oil pan to admit air when the mouth of the pipe is exposed by low oil level. It is applicant's plan to thus take advantage of the relatively constant level characteristics of this center point of the surface of the oil in distinction to the widely fluctuating levels with respect to points near the side or end walls of the pan, to more accurately regulate the feed of the oil.

"We find this principle of selecting the center of the surface of the oil bath as the controlling point for regulating the feed of oil to be fully appreciated by Harne. Harne, however, employs a simple oil feed pipe with a float valve control, the float and valve being located at the center of the surface of the bath. Harne, therefore, discloses a device to take advantage of this principle but of the float feed type rather than the barometric fountain feed style of control.

"Martin discloses a barometric type of feed but it does not dispose the mouth of the vent pipe at a point at the center of the oil bath in the crank case pan.

"The question is presented whether it involves invention to substitute certain features shown by Martin, that is, the barometric type of feed in place of the float valve feed of Harne."

The board's comment upon claims 9 and 10 is as follows:

"Claims 9 and 10 include the association of an oil gage with the supply reservoir. Harne provides a gage of somewhat different type on the reserve oil supply tank. His gage comprises a tube leading to the dashboard of the car and is in some way affected by the pressure of the oil in the tank to indicate the level of the oil therein. Applicant's gage so far as involved in the appealed claims is of the simplest type comprising merely a sight tube working on the principle of the common boiler water gage. The tube is open to the pressure inside the vessel above and below the liquid in the vessel and the liquid merely stands in the tube at the same level as in the tank. We see no invention in broadly providing such gage in place of Martin's pressure gage."

Before us the feature which is most strongly emphasized on behalf of appellant is that of carrying his vent pipe into the crank case and particularly locating its end so that it terminates at the level at which the oil is to be maintained in the crank case and at the intersection of the longitudinal and transverse centers of the crank case. In the oral argument it was said, in substance, that this constitutes the key to the success of the invention.

The advantage of so locating the crank case end of the vent pipe is said to be that no matter how the vehicle may tilt, whether from side to side or from end to end, the leveling of the oil is unaffected, equilibrium of level being constantly maintained, whatever the position of the vehicle.

It is pointed out that Harne has no vent pipe and that Martin's vent pipe does not extend into the crank case.

It is not suggested by either of the Patent Office tribunals that this feature of location is unimportant, or unpatentable except in view of the prior art, and it is our view

that it is of importance and worthy of most serious consideration, even though it appears simple now that appellant has provided it. Eibel Process Company v. Minnesota & Ontario Paper Company, 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523.

As, of course, Martin shows no such arrangement as that of appellant since his vent pipe does not enter the crank case, and the oil goes in and the venting takes place at the side, and since Harne has no vent pipe, the sole question seems to be whether it constituted invention to substitute for Harne's float control arrangement a vent pipe with its end located as has been described.

It may be said that on behalf of appellant it is questioned whether Harne teaches location of his float chamber centrally both longitudinally and transversely. Harne does not, in fact, refer in terms to any central location longitudinally, but speaks of arranging the float chamber in the center of the crank case, transversely of the engine.

However this may be, we are not convinced that Harne's float arrangement may properly be held to anticipate the emphasized feature of appellant's device, especially in view of the showing made of record respecting the operation of the Harne device and the operation of the involved device.

During the prosecution of appellant's application a number of affidavits were filed respecting different phases of the case. Some of these were of no value, as the tribunals of the Patent Office correctly held, but others of them, one going to the question of tests of a device constructed in accordance with the Harne drawings and others to the question of the practicability and commercial success of appellant's device, we regard as impressive and helpful in determining the issue.

It is clearly established by statements of disinterested affiants that appellant's device is thoroughly workable and practical; that substantial savings in oil were accomplished by its use, and that it is both practically and commercially successful. The affidavit, also by a disinterested party, who appears to be a well-qualified mechanic in this field, with respect to the test of the device constructed by him in accordance with the drawings of Harne (it not appearing that the Harne device although patented in 1922 has ever gone into commercial production) certainly discloses results which

tend, in our opinion, to raise a serious question as to whether in any practical or true sense the Harne device is operative at all. The Examiner himself seemed to have doubt as to the operativeness of the Harne structure, but expressed the opinion that it "could readily be made operative by use of ordinary mechanical skill in applying the principles of the invention." It seems proper to remark that if so made operative it would be as a float device and not as the open end tube device of appellant.

The Board said, "We have considered the record but are not convinced that Harne's device would be considered inoperative within the range of latitude of the patent laws." It is pointed out in the Board's decision that the claim is made that the device constructed in accordance with Harne's drawings failed to act until the oil level in the engine pan had dropped too low, namely, that one and three-quarter gallons of oil had to be drained from the crank case before more oil could be let in, but that it is not made clear just why this late action occurred, if known. It is then said that the test of the device was not made with one installed in an engine and operated under working or road conditions, but on a stationary device, the oil being drawn off while the pan in which the device was mounted was merely tilted, and the Board suggests that a different result might have been obtained from a test under actual running conditions.

As to the foregoing it may be said that, as we understand the statement of the affiant, the device which he made in conformity with appellant's application was also tested by him on a stationary device, that is in the same manner as was the Harne device, and appellant's device did work satisfactorily in that condition, just as it is shown by other testimony to have worked satisfactorily in actual running tests in engines of automobiles and trucks of different makes.

It may be added that it is insisted on behalf of appellant that Harne does not have an air-tight reservoir, and it is true that his application does not describe his reservoir as such. The Examiner, however, described it as being "sealed," and in any event it does not seem to be questioned that Martin's reservoir is air-tight. So, this feature is regarded as anticipated.

All this, however, does not satisfy us that Harne's float arrangement, even if, as

suggested by the Examiner, it could be made operative by mechanical skill, should be held to negative invention in appellant's specific structure, and we feel constrained to hold that appellant's arrangement goes beyond mere mechanical skill and may properly be regarded as invention. Therefore, we are of opinion that claims 1 and 5 should be allowed.

Numerous authorities are cited in the brief on behalf of appellant, but we deem it unnecessary to review them. After all, the question here is purely one of fact, and each case of this nature must be determined upon that basis.

■ As to claims 9 and 10 in which all that is insisted upon is the device operative in response to suction in the reservoir for indicating the quantity of oil in the reservoir, we are not convinced that anything patentably new over the reference of Harne is shown. Counsel for appellant stresses the fact that Harne speaks of the tube in his reservoir as a "pressure" tube, while appellant speaks of "suction" as operating the indicating needle, this suction resulting, as we understand it, from a bellows-like member referred to in the description heretofore given of appellant's device as a diaphragm. We agree with the argument of the Solicitor for the Patent Office to the effect that pressure and suction, as shown here, is a distinction in words rather than in substance, and the modifications of the prior art which appellant has made to provide his indicating gage cannot, we think, be regarded as inventive.

The decision of the Board of Appeals is modified, being affirmed as to claims 9 and 10, and reversed as to claims 1 and 5.